

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

February 20, 2023

**BY ECF**

The Honorable George B. Daniels
United States District Judge
500 Pearl Street
Southern District of New York
New York, New York 10007

      Re:    *United States v. Sean Gambrell*, S3 20 Cr. 57 (GBD)

Dear Judge Daniels:

      The Government respectfully submits this letter in advance of Sean Gambrell's February 22, 2023 sentencing. In connection with his membership in the 59 Brims gang, Ervin participated in a gunpoint robbery, during which a weapon was discharged. A sentence within the Stipulated Guidelines Range of 70 to 87 months' imprisonment would be sufficient but not greater than necessary to reflect the seriousness of his offense, to deter others who might want to join violent street gangs in New York, and to serve the purposes of sentencing.

**I.    OFFENSE CONDUCT**

    **A.  Background**

      As set forth in the presentence report dated June 22, 2021 (the "PSR"), the 59 Brims (sometimes referred to as "Primetime") are a violent street gang with a national presence and a large number of gang members in the New York City area. (PSR at ¶¶ 40-46.) The 59 Brims were one of the original ten sets formed under the United Bloods Nation ("UBN") on Riker's Island in 1993 by Omar Portee, a/k/a "O.G. Mack." (*Id.*) While the 59 Brims were formed on Riker's Island, the gang has a large national presence, including in California, Georgia, Virginia and North Carolina. (*Id.*) The 59 Brims have many members in Brooklyn, the Bronx, and Manhattan. (*Id.*) The members of the 59 Brims engaged in an array of racketeering activity to further the gang's interests, including acts involving murder and attempted murder; acts involving robbery; narcotics distribution; and acts involving bank fraud and wire fraud.

      The 59 Brims, like most other sets of the Bloods in the UBN, have two separate hierarchical rank structures: the "World Wide Lineup," for 59 Brims members in the prison system (often referred to as the "Prison Lineup") and the "World Wide Lineup in the Town," *i.e.*, members of the 59 Brims that are not incarcerated (often referred to as the "Street Lineup"). The Prison Lineup gives orders to the Street Lineup, and the Street Lineup carries out those orders. (*Id.*) Both the Prison Lineup and the Street Lineup follow the below rank structure (in highest rank order):

- "GF" or God Father
- High 020
- Low 020
- 5 Star General/Gangsta[1]
- 4 Star General/Gangsta
- 3 Star General/Gangsta
- 2 Star General/Gangsta
- 1 Star General/Gangsta

### B.  The Defendant

As set forth in the presentence report, Gambrell, along with fellow gang member Tyrone Ervin, participated in a gunpoint robbery in the Bronx that occurred on May 21, 2019.  Ervin was directed by other gang members to rob an individual playing dice in the Bronx, who was believed to be carrying a substantial amount of cash.  Ervin agreed to commit the robbery and in fact committed the robbery with others, including Gambrell.  As Ervin and his co-conspirators were running away, one of the victims of the robbery brandished a gun and shot at the assailants.  In response, Ervin brandished his firearm and discharged multiple rounds.  The robbery and shooting occurred shortly after 7:00 p.m. at a busy intersection in the Bronx; more than 20 bystanders (including small children) can be seen running from the scene of the shooting after it happened. (PSR ¶ 56).

Gambrell's violence with the 59 Brims was not limited to his participation in the May 21, 2019 robbery.  Gambrell also participated in a November 29, 2019 robbery, during which a victim was lured to Jerlaine Little's apartment building for sex, but was instead assaulted and robbed at gunpoint by multiple gang members, including Gambrell.  (PSR ¶ 55).

### C.  GUILTY PLEA AND APPLICABLE GUIDELINES RANGE

On July 6, 2022, the defendant pled guilty, pursuant to a plea agreement with the Government, to committing an assault with a dangerous weapon in aid of racketeering.  (PSR ¶¶ 27.)  In the plea agreement the parties stipulated that the Stipulated Guidelines Range was 70 to 87 months' imprisonment (the "Stipulated Guidelines Range").

---

[1]  Some members of the 59 Brims refer to the "General" positions as "Floors," *i.e.*, 5th Floor, Fourth Floor, etc.

## II. DISCUSSION

### A. Applicable Law

The Sentencing Guidelines provide strong guidance to sentencing courts after *United States v. Booker*, 543 U.S. 220 (2005). Because the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall v. United States*, 552 U.S. 38, 46 (2007), district courts must treat the Guidelines as the "starting point and the initial benchmark" in sentencing proceedings. *Id.* at 49.

After making that calculation, the Court must consider the factors outlined in 18 U.S.C. § 3553(a), which provides that a sentencing "court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection," and then sets forth seven specific considerations:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established [in the Guidelines];
>
> (5) any pertinent policy statement [issued by the Sentencing Commission];
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

### B. The Court Should Impose a Sentence Within the Stipulated Guidelines Range

The Government respectfully submits that a sentence within the Stipulated Guidelines Range is appropriate for this defendant.

*First,* the nature and circumstances of the defendant's offense conduct weigh in favor of a Guidelines sentence. The defendant participated in a violent gang shooting and robbery. Further still, the defendant has committed infractions in jail, including two instances involving fighting.

*Second*, the Stipulated Guideline Range is necessary to adequately punish the defendant and to demonstrate the seriousness of his conduct. As shown above, the defendant was a member of a criminal organization responsible for multiple acts of violence, including murders, and drug dealing throughout the community.

Finally, looking beyond the defendant, in a case like this—where the defendant was involved in a sprawling, violent gang, the need for general deterrence is important. Sentences in this case will send a message to anyone who might consider joining a gang like the 59 Brims that their conduct will be punished, and that they will be held accountable.

### II. CONCLUSION

For the reasons set forth above, the Court should impose a sentence within the Stipulated Guidelines Range..

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

by: /s
Peter J. Davis
Rushmi Bhaskaran
Assistant United States Attorneys
(212) 637-2468

cc:   Counsel (by ECF)